Martin B. Stecher, J.
The respondents, former tenants of the petitioner, move anew for an order directing the clerk of this court to restore to them rent deposited pursuant to an order made by me nearly two years ago (Real Property Actions and Proceedings Law, § 755).
The history of this litigation and of the statute on which it is based has been fully reported (176 East 123rd St. Corp. v. Flores, 65 Misc 2d 130) and need not be repeated here. Suffice to say the prior application was denied because the intent of the *283 statute was to coerce landlords to comply with applicable housing laws; the landlord had cured some of the violations; and it was reasonable to hope that by retaining the fund on deposit the landlord might be induced to remove additional violations. In denying the prior application, however, I said (65 Misc 2d 130, 135) “ Should it be factually demonstrated at a later date that the retention of the fund will no longer serve the purposes of the statute, the court will reconsider the disposition of the fund.”
The Legal Aid Society, attorneys for the respondents, now renew their motion, demonstrating factually that this deplorable building has been abandoned. On the evidence before me I conclude that there is no further likelihood that any of the violations will be removed or that this building will be returned by its owner to the city’s diminishing inventory of decent housing.
The petitioner-landlord having defaulted on the return of this motion, the moving parties, the respondents-tenants, are entitled to prevail.
The City of New York, however, moves for leave to intervene pursuant to the provisions of CPLR 1013 and for an order directing that the fund held by the clerk of the court be paid over to the city pursuant to the provisions of CPLR 2606.
Both motions are denied.
Intervention is denied for there is no pending action or proceeding in which to intervene. The issues in the possessory proceeding were determined nearly two years ago. As between landlord and tenants the right to possession of the fund has been determined by the landlord’s default. Certainly, the statute (CPLR 1013) contemplates further litigation including pleadings to be served by the party seeking intervention (CPLR 1014). (The city’s failure to annex such a pleading in itself requires denial of the motion [Mohawk Maintenance Co. v. Drake, 29 A D 2d 689; cf. Leichter, Civil Motion Practice, § 144.02] although the motion need not he determined on so narrow a ground.)
The city’s right to relief is not enhanced by its motion made under CPLR 2606. Motions — except in rare cases such as applications for léave to intervene — can only be made by parties to the litigation (Leichter, Civil Motion Practice, § 3). For the city to take advantage of the statute, a special proceeding is required (CPLR 2606, subd. 2). This it has failed to initiate.
Substantial rights should not, however, be determined on procedural grounds alone; for if the city is in fact entitled to this fund it would be appropriate to stay execution of the order granting the tenants’ motion (CPLR 2201) pending the institution of a proper proceeding by the city. Such course is not warranted *284 here; for on the face of the papers before me it is clear that the right of the tenants to the fund is superior to that of the city.
The city alleges that following the making of my order of deposit dated July 30, 1969, it expended $2,545.47 on this property. All of this sum — with the possible exception of a fuel purchase of $286- — -was expended for services rendered after the respondents quit the premises; and of the entire amount, only $375 was used to eliminate violations. The balance was spent for current operations: the purchase of fuel and payment of the superintendent’s salary. Presumably, the city’s funds were expended pursuant to the authority of section 556-10.0 of the Administrative Code (no other basis is offered) and recoupment is sought by authority of section 564r-22.0 of that code.
Section 564-22.0 of the Administrative Code provides in pertinent part, “ The expenses attending the execution of any and all orders duly made by the department shall respectively be a several and joint personal charge against each of the owners or part owners and each of the lessees and occupants of the building. * * * Such expenses shall also be a lien on all rent and compensation due, or to grow due, for the use of any place, room, building, premises, matter or thing to which such order relates, and in respect of which such expenses were incurred ”.
Despite the language of the code, these respondents are not personally liable for the city’s expenditures. To impose on them the duty to pay the landlord’s after acquired debts,1 obligations which are in no sense those of these tenants, would amount to deprivation of property without due process of law (U. S. Const., 5th Arndt.; 14th Arndt., § 1; N. Y. Const., art. I, § 6). The city’s only cognizable claim is to a lien on rents. But rents not yet due are not a debt owing to a landlord which may be attached or executed upon to satisfy the landlord’s obligations (Glassman v. Hyder, 23 N Y 2d 354); nor are they property of the landlord to which a lien may attach. It is only when rents become due to the landlord, when he is entitled to receive them, that his creditors may reach them by lien, levy or attachment.
A lien cannot be elevated to a position superior to the interest to which it attaches. When voluntarily created it only attaches to such interest as the lienor has (Sayles v. Best, 140 N. Y. 368); and when involuntarily created, as by judgment, it is “a lien only upon the interest of [the] judgment debtor at the time the judgment was docketed” (Ptaszynski v. Flack, 263 App. Div. 831; Matter of Eisenberg v. Mercer Hicks Corp., 199 Misc. 52, 55, affd. 278 App. Div. 806). Stated otherwise, the city’s right *285 to the fund on deposit is no greater than was that of the landlord when the city made its expenditures.
What then was the interest of the landlord when the rents were deposited with the court? Legal title to the fund having vested in the City Treasurer (CPLR 2601, subds. [b], [c]), did equitable title vest in the landlord with the right of enjoyment suspended until the performance of the condition (elimination of the offending violations); or did equitable ownership remain in the depositors, the fund to be transferred by the ‘ ‘ escrowee ’ ’ on the performance of the condition (cf. Asher v. Herman, 49 Misc 2d 475)? The statute does not say and the precise point has not been previously decided.
The statutory scheme, however, suggests that the fund, despite the use of the word “ rent ” to describe it, in no sense was the property of the landlord when deposited, or thereafter, when the city made its expenditures. The only proceeding which may give rise to an order of deposit under section 755 of the Real Property Actions and Proceedings Law is a nonpayment of rent proceeding. The order stays the landlord from evicting the tenant despite the latter’s failure to pay rent; and the reason for it is the existence of a “ statutory * * * constructive
eviction ” (941 Park Ave. Corp. v. Fried, 148 Misc. 137, 139) which deprives the tenant ‘ ‘ of the beneficial enjoyment of a portion of the premises ” (Peshkin v. Powell, 182 Misc. 14, 16). In order, however, to induce the landlord to make repairs the tenant is required to create a fund in the court’s possession which will be delivered to the landlord when his property again becomes habitable. It is thus clear that at no time before the performance of the condition does the fund become the property of the landlord. The city’s lien may not, therefore attach to it. The property at all times has been the property of the tenants; and it being clear that the conditions will not be performed they are entitled to its return. (Asher v. Herman, supra.)
There is another ground for refusing to pay the fund to the city. The moneys which it seeks to recoup were spent principally for fuel and superintendent’s services. They were not expended for the purpose of the statute, restoring the property to habitable decency. The landlord would have had no right to use the fund for operating expenses (Matter of Emray Realty Corp. v. De Stefano, 5 Misc 2d 352; cf. Kahn v. Riverside Syndicate, 59 Misc 2d 238, revd. on other grounds 34 A D 2d 515) and I see no reason why his debt to the city for having performed this function for him should be paid from this fund or by these tenants.
*286 The city must be encouraged to step in and manage deteriorating properties before they reach the deplorable state of this building. That will best be accomplished by enacting legislation similar to article 7-A of the Real Property Actions and Proceedings Law permitting the city, on application, to be appointed administrator of such properties and to use the rental income to help discharge the management and repair obligation thus assumed. The objective cannot be accomplished by the city’s piecemeal seizure of deposits such as those made by the respondents in this case.
Settle separate orders on behalf of each moving tenant directing the City Treasurer to pay to each of them the sum held for his benefit. Each order shall contain a stay of the payment provision for 30 days after entry.